————————o o-o————————

N. Hughes Farnsworth, by N. G. Paris, his guardian, appellant, *vs.* Mary Oliphant, adm'x, &c. respondent.

A surrogate has no power or authority to call the administrators of a deceased guardian to account, on the petition of the ward, by a new guardian.

THIS was an appeal from an order of the surrogate of the county of Washington, dismissing a petition for an account. The petition, which was filed on the 15th of April, 1853, set forth that in May, 1837, Robert W. Oliphant, the husband of the respondent, was appointed the general guardian of the appellant and his brother, who were infants; that he acted as such guardian until some time in the year 1842, when he died intestate; and that in the month of June in that year the respondent was appointed administratrix and Edwin Foot administrator, by the surrogate of Washington county, and had never been discharged from their trusts; that the said Robert W. Oliphant deceased received a large amount of property belonging to the petitioner, and that he had never accounted before the surrogate, nor had his administrators accounted, since his death. The surrogate issued a citation, pursuant to the prayer of the petition, requiring the administrator to appear and render an account of what R. W. Oliphant deceased had done, as such guardian. On the return day the respondent, who was alone served with the citation, appeared by her proctor, and filed her objections in writing against rendering an account; among which were these:

1. That the surrogate had no jurisdiction to call administrators

of a deceased guardian to account; and she asked that on that ground the proceedings should be dismissed. 2. The respondent further objected against accounting, on the ground that John Sarle had been appointed the guardian of the appellant, since the death of R. W. Oliphant, and that his representatives had, since the said appointment, accounted with said Sarle, and the moneys and effects in the hands of said administrators had been by them paid over to said Sarle as such guardian, and which said accounting and settlement was final and conclusive, and a bar to these proceedings. Other objections were filed, which it is not necessary to state here. A hearing took place before the surrogate, when the appointment of R. W. Oliphant as guardian was proved, and his death, and the granting of letters to the respondent and Foote on the 10th of June, 1842. It was also proved that John Sarle was appointed the general guardian of the appellant and M. M. Farnsworth, by the surrogate of Washington county, on the 25th day of June, 1842. A receipt, purporting to be executed by the said Sarle, and which was proved to be in his handwriting, was offered in evidence. It was objected to, and was afterwards proved by Sarle himself, who was examined as a witness. It was received in evidence, and was in these words :

    " 1846, Jan'y 22.. $1074.80.

Rec'd of Mary Oliphant and Mary Foote, administrators on the estate of R. W. Oliphant deceased, in full for a demand due me as guardian to Hughes Farnsworth.

(Signed)	JOHN SARLE, guardian for<br>Hughes Farnsworth."

The receipt was objected to, on the ground that it was a receipt in full; that it did not excuse the representatives of Oliphant from accounting before the surrogate ; and that Sarle had no power to settle an account between his ward and the representatives of his former guardian. The surrogate received the evidence. It appeared in evidence that Oliphant had received about $6500, one third of which belonged to the appellant. That he had never filed any account of his guardianship; that he had expended of the principal sum which came into his hands

---
---

about $2000, without the order or approval of any court; and that Sarle had no competent evidence before him when he settled with the representatives of Oliphant, but relied upon his knowledge, and the good reputation of his predecessor, as sufficient evidence of the correctness of the accounts which were presented to him. The surrogate adjudged and decreed " that the said Mary Oliphant, administratrix, &c. be not compelled to account, and that all proceedings against her be and the same are hereby dismissed." From that decree the present appeal was taken.

*U. G. Paris*, general guardian of appellant, in person.

*O. F. Davis*, for the respondent.

*By the Court*, C. L. ALLEN, J. It does not distinctly appear, from the decree, upon what ground the surrogate based his decision dismissing the proceedings before him. , The great and serious question in the case, however, is, in my judgment, whether he had any power to call the respondent and her co-administrator to such an accounting as was prayed for in the petition. It has often been remarked, and decided, that the surrogate's court is entirely a creation of the statute, and that the surrogate can exercise no power or authority except such as is expressly conferred upon him by the statute. It will be necessary, in considering this question, to review some of the sections of the statute, under which it is claimed this accounting can be required.

Sec. 6, 2 Rev. Stat. 151, clothes the surrogate, when application is made, with the same power to allow and appoint guardians as is possessed by the supreme court; and in all cases he is to inquire into the circumstances of the minor and the value of his estate. Sec. 7 directs him, before appointing the guardian, to require of him a bond with sufficient sureties, conditioned that " such person will faithfully in all things discharge the duty of a guardian to such minor, according to law, and *that he will render a true and just account of all moneys and property received by him, and of the application thereof, and of his guardian-*

*ship* in all respects to any courts having cognizance thereof, when thereunto *required.*"

It is to be remarked here that the condition of the *bond* is that he, (the guardian,) not his representatives, shall account when thereunto required.

Sec. 9 directs the surrogate to keep the bond among the papers in his office, which may be prosecuted in the name of the ward whenever the surrogate shall direct. Sec. 10 gives to every guardian so appointed the same powers as testamentary guardians. Sec. 11 provides that "*any guardian*, appointed by *any surrogate*, may be cited to account before the surrogate who appointed him, in the same manner as administrators, upon the application of any ward or relative of any such ward, and *on good cause being shown*, may be compelled to account, in the same manner as an administrator. And upon a ward arriving at full age he shall be entitled to compel such account *without* showing any cause."

By section 12, every guardian whose ward has arrived at full age, and every guardian who shall be superseded in his trust, may apply for a citation to attend the settlement of his accounts, and by section 14, any ward, or relative of such ward, or any surety, may apply to the surrogate, on the ground of incompetency or misconduct, for a citation to the guardian to show cause why he should not be removed. And when a removal is made, the surrogate is to proceed, by section 17, and appoint a new guardian in the same manner as if no guardian had been appointed.

Section 24 of the *Laws of* 1837, *ch.* 660, (2 *R. S. 4th ed. p.* 137, § 45,) provides for the case of insufficient sureties, or where they are becoming insolvent or are about to remove from the state. The surrogate is to cite the guardian to show cause why he should not procure new sureties. When any guardian is removed in such cases he may be required to account immediately, in the manner required in the 11th section. Sections 29 to 34 inclusive regulate the proceedings where a guardian applies to resign his trust. By section 35, every guardian is required to file an annual account and inventory under

oath, with the surrogate; and by section 37, if he neglects so to do for three months after the same should have been filed, " *such surrogate shall proceed against such guardian*" in the manner before prescribed, to call him to account.

Now it is to be observed, that in none of these sections or provisions is the surrogate authorized or empowered to call the executors or administrators of a deceased general guardian to account. The statute, throughout, only speaks of the *guardian,* and in no case of his representatives. The condition of his bond is that he (not his representatives) shall at all times render an account, whenever lawfully required. He is created and treated, in and by the statute, as the *trustee* of his ward. He is safely to keep the things he may have in his custody, belonging to his ward; he shall not make or suffer any waste, sale or destruction of such things, nor of the inheritance; he shall keep up and sustain the houses, gardens and land by the issues and profits or other moneys in his hands, and shall answer for the rents and profits of the real estate by a lawful account. (2 *R. S.* 113, § 20.) He may resign his *trust,* setting forth his reasons, and complying with the requisitions of the statute. (*Laws of* 1837, *ch.* 460, § 51.) The administrator has no right to take possession of the estate of the ward. The personal estate belonging to him forms no part of the assets of the intestate coming to his hands. But the surrogate, on the application of the infant, can *alone* appoint a new guardian in the manner prescribed by the acts before cited. In such case there is no power in the new guardian to call the representatives of the deceased guardian to an account, although he may call his *predecessor* to account, where he has been removed for the causes already alluded to. The administrators, as just remarked, have no control over, and no right whatever to take possession of, the estate of the ward. His effects are no part of the assets belonging or coming to the hands of the administrators. The creditors or next of kin have no right to appoint the successor of the guardian, which they might do if the administrator represented the guardian, as respects the ward's estate. The only case, that I can find, where the representatives of the de-

ceased guardian may be called to account, is where they have received some portion of the ward's estate. (*Dakin* v. *Demming*, 6. *Paige*, 95.) It is not charged in the petition, as it should be, nor proved, that such were the facts in this case.

It is argued that there is no remedy, if the present proceedings are not sustained. I do not concur in this view. The relief is to be obtained by complaint in a court of equity. (1 *Barb. Ch. Rep.* 565, 568. 3 *id.* 341.) The case in 3 *Hill,* 77, deciding that sureties cannot be prosecuted till after an accounting, is not in point to sustain the position of the appellant's counsel. That was a case of the prosecution of a bond given on the appointment of a guardian to sell the real estate of an infant, under the act of 1815, where the accounting was to be had under the direction of the *chancellor;* and the court decided that the declaration should show that there had been *proceedings* against the guardian, in chancery, and the remark fell from Judge Bronson that if an account had "not been taken in the lifetime of the guardian, his personal representatives might be required to account; or if there was a difficulty in pursuing that course, the plaintiff must make out a *special case* showing the necessity of a suit on the bond." The difficulty here is, that a court of limited and special jurisdiction, acting under the powers expressly *delegated* to it, cannot go beyond them, and that no provision is made or jurisdiction created for the present case. The court do not remark or decide that the accounting may be had in the surrogate's court, but say it must be made in a court of general jurisdiction. Nor do they determine that the remedy on the bond is gone, unless an accounting be first had. The chancellor decided otherwise in *Cuddeback* v. *Kent,* (5 *Paige,* 92.) The case of *Stilwell* v. *Mills* (19 *John.* 304,) only decides that where a bond is taken pursuant to the statute, an action at law cannot be maintained on the bond until the guardians have been called to account in the court of chancery. That "a guardianship is a trust, and *it peculiarly and exclusively belongs to the chancellor."*

Whether a suit on the bond may be maintained before accounting, or not, it is not necessary in the present case to

decide. It is sufficient that the surrogate has no power to compel such accounting in his court. Neither is it necessary to consider or determine whether the receipt of the last guardian was a bar to the proceedings. The surrogate was right in dismissing the proceedings, for the reasons already stated, and his decree must be affirmed.

[FRANKLIN GENERAL TERM, September 4, 1854. *Hand, Cady, C. L. Allen* and *James,* Justices.]